1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHARLES KELLY, on behalf of himself        No. 2:14-cv-01507-KJM-CKD
     and all others similarly situated,
12
                    Plaintiff,
13                                              ORDER
              v.
14
     BP WEST COAST PRODUCTS LLC and
15   DOES 1-10, inclusive,

16                    Defendants.

17

18

19            Charles Kelly purchased gasoline at the defendant's ARCO station.  After he chose

20   to pay with a debit card, an electronic display at the pump station warned Kelly he would be

21   charged a $0.35 fee.  He bought gas despite the fee and now has brought this action, alleging he

22   was the victim of a bait-and-switch scheme.  The defendant, BP West Coast Products LLC (BP),

23   moves to dismiss the complaint.  The court held a hearing on November 7, 2014.  Matthew

24   Carlson appeared for Mr. Kelly.  Mark Nadeau (pro hac vice), Isabelle Ord, and Alec Cierny

25   appeared for BP.  The motion to dismiss is GRANTED.

26   I.     BACKGROUND

27            In April 2014, Charles Kelly drove into BP's ARCO station in Vacaville.  First

28   Am. Compl. (Compl.) ¶ 13, ECF No. 7.  He had seen BP's sign advertising gas at a price lower

                                              1

than at other nearby stations.  *Id.* ¶ 14.  When he parked his car in front of a pump, he saw the same price and inserted his debit card in a nearby machine.  *Id.* ¶¶ 16, 19.  The display warned him that if he continued, his card would be charged an additional $0.35.  *Id.* ¶¶ 1, 19.  This was the first time he learned of the fee.  *Id.* ¶¶ 15–17.  Disappointed but undeterred, he accepted the fee, filled his tank, and drove away.  *Id.* ¶ 21.

On the basis of these allegations, Kelly puts forward two claims.  First, he claims BP is liable under the California Consumer Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.*  Compl. ¶¶ 92–99.  He contends BP had a duty to disclose its debit card fee on its street signs and gas dispensers.  *Id.* ¶ 94.  Second, he alleges BP is liable under the California Unfair Competition Law (UCL), California Business & Professions Code § 17200, *et seq.*  Compl. ¶¶ 100–111.  He contends BP acted unlawfully, unfairly, and fraudulently when it did not disclose the debit card fee earlier.  *Id.*  Kelly seeks to represent a class of any BP customers who "purchased gas with a debit card from an ARCO brand gasoline station in the state of California."  *Id.* ¶¶ 37, 51, 65, 79.  He seeks, among other remedies, damages and an injunction requiring BP to disclose the existence of the debit card fee on its street signs and pumps.  *Id.* ¶ 112.

BP has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  Def.'s Mot. Dismiss (Mot.) 1, Mem. P.&A. (Mem.), ECF No. 12.  Kelly opposes the motion, Pl.'s Opp'n (Opp'n), ECF No. 17, and BP has replied, Def.'s Reply (Reply), ECF No. 20.  BP bases its motion on four arguments: first, an injunction and settlement agreement in a previous lawsuit require it to make the disclosures at issue here; second, California law creates a safe harbor for its actions; third, the complaint does not state a claim under the CLRA; and fourth, the complaint does not state a claim under the UCL.  The court considers each of these arguments in turn.

II.    PREVIOUS LITIGATION

As a preliminary matter, the court takes judicial notice of the California state court filings, orders, and the legislative history submitted by BP.  *See* Def.'s Req. Jud. Not., ECF No. 13; Def.'s Suppl. Req. Jud. Not., ECF No. 18.  These documents are properly subjects of judicial notice.  *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of a state court

2

1   opinion and preceding briefing); *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012)

2   ("Legislative history is properly a subject of judicial notice.").

3           BP does not contend that Kelly's claim or suit is precluded as a matter of res

4   judicata; rather, it argues the state court decisions are persuasive authority, Mem. 5:27, and

5   complement certain statutes to create a safe harbor for its conduct, Mot. 2:1–3, 10–11, 19–20,

6   3:1-2.

7           BP is named as a defendant in the three related lawsuits covered by its request.

8   *See Branger v. BP W. Coast Prods. LLC*, No. 02-415984 (Cal. Super. Ct. S.F. filed Feb. 20,

9   2002); *Banke v. BP W. Coast Prods. LLC*, No. BC366925 (Cal. Super. Ct. L.A. filed Feb. 26,

10  2007); *Saunders v. BP W. Coast Prods.* LLC, No. BC460963 (Cal. Super. Ct. S.F. filed May 4,

11  2011).  The plaintiff in *Branger* alleged claims related to BP's non-disclosure of its debit card fee

12  on street signs.  Mem. 5; Ord Decl. ¶ 3 & Ex. B, ¶ 12, ECF No. 14-2.  The parties resolved the

13  case in a class-action settlement and stipulated to an injunction that required BP both to disclose

14  its debit card fee electronically before charging it and to obtain its customers' consent to the fee

15  before they completed a purchase.  Mem. 5; Ord Decl. ¶ 2 & Ex. A, ¶ 3.5, ECF No. 14-1.  In

16  *Banke,* the court dismissed the plaintiffs' complaint for claims under the UCL and CLRA for

17  BP's alleged failure to disclose debit card fees on street signs.  Mem. 5; Ord Decl. ¶¶ 5–6 & Exs.

18  D and E, ECF Nos. 14-4, 14-5.  And in *Saunders*, the plaintiffs again asserted UCL and CLRA

19  claims arising from BP's alleged failure to disclose debit card fees on street signs, but the

20  plaintiffs voluntarily dismissed their complaint.  Mem. 5; Ord Decl. ¶¶ 7–8 & Exs. F and G, ECF

21  Nos. 14-6, 14-7.

22          As noted, the *Branger* injunction requires BP to make certain electronic

23  disclosures.  Class Action Settlement Agreement, Ord Decl. Ex. A, ¶ 3.5, ECF No. 14-1.  It does

24  not require or forbid disclosures along the lines Kelly seeks.  Read in conjunction with the

25  California statutes discussed below, the injunction appears only to require compliance with

26  California Financial Code § 13081, and does not speak to disclosures that would implicate

27  California Business and Professions Code Section § 13530 *et seq.*  Neither does *Banke* preclude

28  /////

3

1    Kelly from pursuing his claims, because he is not a member of the *Branger* class. *See id.* Ex. A,

2    ¶ 1.20–1.21, ECF No. 14-1; *id.* Ex. C, at 2-3, ECF No. 14-3.

3    III.    STATUTORY SAFE HARBOR

4                A defendant may not be held liable under the UCL if another law "actually 'bar[s]'

5    the action or clearly permit[s] the conduct" that gave rise to the claim. *Cel-Tech Commc'ns, Inc.*

6    *v. L.A. Tel. Co.*, 20 Cal. 4th 163, 183 (1999). A CLRA claim may be barred for the same reason.

7    *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 594 (2011). The California Supreme Court

8    draws a careful distinction between "not making an activity unlawful" and "making that activity

9    unlawful." *Cel-Tech*, 20 Cal. 4th at 183. If the legislature has passed a law that specifically

10   authorizes conduct, the safe harbor applies, and a plaintiff may not succeed in a UCL or CLRA

11   claim based on that conduct; however, the safe harbor does not apply if the legislature has simply

12   not otherwise proscribed the conduct in question. For example, in *Alvarez v. Chevron Corp.*, the

13   plaintiffs alleged the defendant had pumped residual low-grade fuel into their cars—fuel left in

14   the hose from the last customer's purchase—even though the plaintiffs had purchased high-grade

15   fuel. 656 F.3d 925, 931 (9th Cir. 2011). But California statutes prohibited the defendants both

16   from draining fuel from their hoses and from changing the per-gallon price of gas mid-way

17   through a fill-up. *Id.* at 929. Against these laws the plaintiff could not state a CLRA or UCL

18   claim; statutes forbade the remedy sought and functionally required the allegedly wrongful

19   conduct. *Id.* at 934.

20              Here, two statutory schemes are relevant. Section 13081 of the California

21   Financial Code requires operators of "point-of-sale device[s]" to disclose fees imposed on a

22   customer before the customer pays them. Cal. Fin. Code § 13081(b). The debit card machines at

23   the pump station in this case are "point-of-sale devices" as defined in that section. *See id.*

24   § 13081(c) ("For purposes of this section, the term 'point-of-sale device' includes any device

25   used for the purchase of a good or service where a personal identification number (PIN) is

26   required . . . ."). Likewise BP is an "operator" of those machines. *See id.* § 13081(d) ("[T]he

27   term 'operator of a point-of-sale device' means the person who imposes the fee on a customer for

28   using a point-of-sale device to pay for a good or service."). The operator must make this

4

1    disclosure on the device itself, and if the device is electronic, the disclosure must also be

2    electronic.  *Id.* § 13081(b), (b)(2).

3              Sections 13532 and 13534 of the California Business and Professions Code also

4    prescribe how BP may advertise its fuel and other services.  Section 13534 forbids the placement

5    of any "advertising matter" on any "advertising medium" unless under one of five exceptions:

6    (1) certain content required by section 13532, discussed below; (2) "[a] description of the

7    products offered for sale"; (3) "[m]ethods of sale, such as self-serve or full-serve"; (4) "[w]ords

8    describing the type of services offered at the place of business, such as food market, carwash,

9    tune up, and the registered trademark or trade name of the service, but not the price of the

10   service"; and (5) information disclosed on "electronic changeable message centers."  Section

11   13532(a) requires a person who displays a motor fuel price on "any advertising medium" to also

12   display, in the same place, "[t]he price per gallon or liter, including all taxes"; "[t]he trademark or

13   brand of the motor fuel"; "[t]he word 'gasoline' or the name of other motor fuel"; "[t]he grade

14   designation of the motor fuel"; and the word "liter" if sold by the liter.  Section 13532(c) forbids

15   the display of multiple fuel prices for the same product unless the advertisement also displays all

16   prices in the same size text and describes what conditions determine whether one price or another

17   will be charged.

18             The court must determine whether these statutes require BP to act as it did or

19   forbid BP from disclosing the existence of a debit card fee on its signs or pumps.  Because this

20   court has jurisdiction based on the parties' diversity of citizenship, it interprets and applies the

21   law as a California court would in the same situation.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78

22   (1938).  The court applies the rules of statutory interpretation as would a California court.  *See*

23   *McNeil v. Time Ins. Co.*, 205 F.3d 179, 183 (5th Cir. 2000); *Gibson v. Parish*, 360 Fed. App'x.

24   974, 979 (10th Cir. 2010) (unpublished).

25             In California, when construing a statute, a court "must 'ascertain the intent of the

26   Legislature so as to effectuate the purpose of the law.'" *People v. Tindall*, 24 Cal. 4th 767, 772

27   (2000) (quoting *People v. Valladoli*, 13 Cal. 4th 590, 597 (1996)). The court first looks to the

28   words of the statute, "giving them their usual and ordinary meaning."  *Lennane v. Franchise Tax*

*Bd.*, 9 Cal. 4th 263, 268 (1994) (quoting *DaFonte v. Up-Right, Inc.*, 2 Cal. 4th 593, 601 (1992)).

"If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have

meant what it said, and the plain meaning of the language governs.'" *Id.* (quoting *Kizer v. Hanna*,

48 Cal. 3d 1, 8 (1989)).  California courts follow the "knows-how-to-say" rule.  *See*

*Interinsurance Exch. Of Auto. Club v. Super. Ct.*, 148 Cal. App. 4th 1218, 1237 (2007) ("If the

Legislature wishes to expand the meaning of the term 'premium' beyond its plain and ordinary

meaning, then it must amend that statute to expressly define that term to have an extraordinary,

broader meaning. However, until that term is otherwise defined, we must interpret it based on its

plain and ordinary meaning . . . .").

        If necessary, the court "next consider[s] the context in which these words appear,

attempting to harmonize the words of the statute within the overall statutory scheme." *Valladoli*,

13 Cal. 4th at 599.  A court may also consider a statute's legislative history: "Both the legislative

history of the statute and the wider historical circumstances of its enactment may be considered in

ascertaining the legislative intent."  *Dyna-Med, Inc. v. Fair Emp't & Hous. Comm'n.*, 43 Cal. 3d

1379, 1387 (1987); *see also Valladoli*, 13 Cal. 4th at 602; *Lennane*, 9 Cal. 4th at 268

(investigating a statute's "enactment history").

        Here, the plain language of Financial Code section 13081 requires operators of

point-of-sale devices to disclose fees imposed on a customer before the customer is required to

pay them.  Cal. Fin. Code § 13081(a).  It does not forbid disclosure of the fee elsewhere or

proclaim disclosure on the device alone is sufficient.  The legislative history BP cites confirms

this plain meaning.  *See, e.g.*, California Senate Finance, Investment and International Trade

Committee Hearing Digest (June 19, 1997), Ord Decl. Ex. I, at 2, ECF No. 14-9 (reporting the

purpose of Financial Code section 13081 is "to ensure customer awareness of the costs of using

point-of-sale devices for goods and services").

        The other statutes are more ambiguous.  Section 13534 of the Business and

Professions Code forbids the placement of "advertising matter" on an "advertising medium."  But

what is "advertising matter"?  The statute does not provide a definition.  The "advertising

matters" listed as exceptions include prices, trademarks, brands, how fuel is sold, and descriptions

1   of products and services, including carwashes, food markets, tune-ups, and trade names, but not

2   the price of those services.  Cal. Bus. & Prof. Code §§ 13534(a), 13532.  Such a broad range of

3   "matters" suggests BP's willingness to accept payment by debit card is an advertising matter and

4   that it may not display that matter unless an exception applies.  Willingness to accept payment by

5   debit card may or may not fit within the same realm of "services" as food markets, carwashes,

6   tune-ups, trademarks, trade names, and self-serve of full-service fueling.  *Id.* § 13534(a)(2), (3).

7   On the other hand, the Legislature is presumed to know how to require or permit specific

8   disclosures about prices and services, and it has imposed specific requirements to disclose or not

9   to disclose fuel grades, services, prices, and similar information.

10          This statute's context suggests the opposite, however.  Section 13413 forbids

11   "deceptive, false, or misleading statement[s] by any means whatever regarding quality, quantity,

12   performance, price, discount, or saving used in the sale or selling of any commodity regulated

13   pursuant to this chapter."  Cal. Bus. & Prof. Code § 13413.  It gives examples of forbidden

14   practices, including "[u]sing false or deceptive representations or designations in connection with

15   the sale of petroleum products"; "[a]dvertising petroleum products or services and not selling

16   them as advertised"; "[m]aking false, deceptive, or misleading statements concerning conditions

17   of sale or price reductions"; and "[r]epresenting that the consumer will receive a rebate, discount,

18   or other economic benefit and then failing to give that rebate, discount, or other economic

19   benefit." *Id.*  This section suggests the regime is meant to provide full information to customers

20   and to prevent fraud, deception, or confusion of any kind.  Requiring BP to disclose its fee fits

21   within this apparent broad purpose.  The sections' legislative history confirms this reading.  The

22   proponents of Senate Bill 1751, enacted in California Business and Professions Code section

23   13530 *et seq.*, argued the bill would "stop false or misleading advertising in the sale of petroleum

24   products." California Consumer Services Agency Bill Analysis, SB 1751 (Aug. 13, 1984), Suppl.

25   Ord Decl. Ex. A, at 5, ECF No. 19-1.

26          In conclusion, the financial code's language is unambiguous.  It neither forbids the

27   result the plaintiff seeks, nor expressly authorizes BP to omit from its signage the existence of a

28   debit card fee.  Although the bare language of Business and Professions Code sections 13532 and

7

1   13534 is amenable to an interpretation that would preclude this suit under the safe harbor

2   doctrine, these sections' context and legislative history suggest a broader purpose: preventing all

3   consumer confusion, deception, and fraud.  Disclosure of a debit card fee does not conflict with

4   this purpose and may in fact advance it.  The safe harbor rule does not apply here.

5   IV.   DISMISSAL FOR FAILURE TO STATE A CLAIM

6          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

7   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

8   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

9   under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

10  1990).  Although a complaint need contain only "a short and plain statement of the claim showing

11  that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to

12  dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim

13  to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

14  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more

15  than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

16  conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting

17  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

18  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

19  its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the

20  interplay between the factual allegations of the complaint and the dispositive issues of law in the

21  action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

22          In making this context-specific evaluation, this court must construe the complaint

23  in the light most favorable to the plaintiff and accept as true its factual allegations. *Erickson v.*

24  *Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "'a legal conclusion couched as a

25  factual allegation,'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286

26  (1986)), nor to "allegations that contradict matters properly subject to judicial notice" or to

27  material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State*

28  *Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).  A court's consideration of documents attached

8

1    to a complaint or incorporated by reference or matter of judicial notice will not convert a motion

2    to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08

3    (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare*

4    *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even

5    though court may look beyond pleadings on motion to dismiss, generally court is limited to face

6    of the complaint on 12(b)(6) motion).

7          When a plaintiff pleads a claim under state law in federal court, the Federal Rules

8    of Civil Procedure govern the pleading, including Rule 9(b)'s specificity requirement. *Kearns v.*

9    *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) applies to claims brought under

10   the CLRA and UCL. *Id.* It requires that a plaintiff "alleging fraud or mistake . . . state with

11   particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To plead a

12   claim with particularity, the plaintiff must describe the "who, what, when, where, and how" of the

13   fraud. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba–*

14   *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

15          A.    <u>CLRA</u>

16          In his complaint, Kelly alleges a claim under section "1750 *et seq.*" of the

17   California Civil Code. Compl. at 17:10-11. In a demand letter attached the complaint, Kelly

18   claimed the defendant had violated section 1770(a)(9). Compl. Ex. A, ECF No. 7-1. The

19   complaint also describes BP's alleged "bait and switch" scheme. Compl. ¶¶ 13-35; Opp'n 1:2–

20   17. This allegation is consistent with a claim under section 1770(a)(9), which makes it unlawful

21   to "[a]dvertis[e] goods or services with intent not to sell them as advertised." Cal. Civ. Code

22   § 1770(a)(9).[1] The court therefore construes Kelly's complaint as asserting a claim under

23   California Civil Code section 1770(a)(9). The court also concludes Kelly's complaint provides

24   BP with sufficient information to rebut the charges against it. Its factual allegations are not

25   voluminous, and its claims are not complicated.

26   /////

27   _____

28          [1] Section 1770(a) forbids more than twenty "unfair methods of competition and unfair or
     deceptive acts or practices" if employed to sell or lease goods or services to a consumer.

1    The provisions of the CLRA are to be "liberally construed and applied to promote

2    its underlying purposes, which are to protect consumers against unfair and deceptive business

3    practices and to provide efficient and economical procedures to secure such protection." Cal. Civ.

4    Code § 1760.  Yet "California courts have generally rejected a broad obligation to disclose,

5    adopting instead the standard as enumerated by the California Court of Appeal in *Daugherty v.*

6    *American Honda Motor Co.*"  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir.

7    2012) (citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)).  If, as

8    here, the plaintiff alleges an omission, the defendant may be liable if it omitted "a fact the

9    defendant was obliged to disclose," *Daugherty*, 144 Cal. App. 4th at 835–36, and the omitted fact

10   was material, *see Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360

11   (2003).  Finally, a plaintiff must allege his or her actual reliance to state a claim for damages

12   under the CLRA.  *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 980 (2009).

13        1.    Materiality

14        A fact is material when a "reasonable consumer" would have behaved differently

15   knowing it.  *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (quoting

16   *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993) and *Consumer Advocates*, 113 Cal. App. 4th

17   at 1360).  Materiality is generally a question of fact.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 327

18   (2009).  Here Kelly alleges BP did not disclose the existence of a debit card fee on its street signs

19   and the face of its pumps, but agrees BP warned him of the fee before he paid it.  In the context of

20   motor fuel sales, a few cents may drive a person from one seller to another.  And many gas

21   stations also accept cash, credit, and debit cards and do not charge a separate fee for use of a card.

22   The court declines to hold that as a matter of law, the existence of a debit card fee cannot have

23   influenced the behavior of a reasonable consumer.

24        2.    Duty to Disclose

25        A duty to disclose arises in four circumstances: "(1) when the defendant is in a

26   fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of

27   material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact

28   from the plaintiff; and (4) when the defendant makes partial representations but also suppresses

10

1   some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).[2]  BP is not Kelly's

2   fiduciary, and BP cannot be said to have "actively concealed" the fee from Kelly or

3   "suppress[ed]" material facts: BP did not let Kelly buy gas without affirming he would pay the

4   fee.  Kelly does allege BP knew about the fee, but he didn't, and BP advertised the price of gas

5   but not the existence of a fee.  If BP was obliged to disclose the fee, therefore, its duty would

6   arise, if at all, under the second or fourth of the duty-to-disclose prongs.

7          Regarding the second prong, BP had "exclusive knowledge" of the fee if

8   "according to the complaint, [BP] knew of [the fee] while plaintiffs did not, and, given the nature

9   of the [fee], it was difficult to discover." *Herron*, 924 F. Supp. 2d at 1175 (quoting *Collins v.*

10  *eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011)).  Although Kelly alleges he did not know

11  about the fee, that fee was not so difficult for him to discover that its absence from the street sign

12  subjects BP to liability.  *See id.* (deficiencies in laptop's battery life widely and publicly disclosed

13  long before plaintiff made purchase); *cf. Shvarts v. Budget Grp., Inc.*, 81 Cal. App. 4th 1153,

14  1160 (2000) (affirming dismissal of plaintiffs' UCL claims because public was unlikely to be

15  deceived: defendants had not surprised plaintiffs with fee, had reasonably disclosed it, and had

16  provided options to avoid fee).  BP disclosed the fee soon after Kelly pulled into the ARCO

17  station.  Kelly could have avoided the fee altogether by paying with cash or buying gas

18  elsewhere.  Although the statutory scheme applicable here does not bar this suit absolutely, it

19  does specifically require and prohibit certain disclosures.  BP did not run afoul of the law by

20  disclosing the fee as required by the Financial Code, as soon as it learned Kelly intended to pay

21  with a card, rather than risk disclosing information on a sign that may or may not have been

22  prohibited by the Business and Professions Code.

23  /////

24  /////

25

26      [2] The court notes an apparent disagreement among California courts about the
    applicability of these four factors to CLRA claims.  *See Herron v. Best Buy Co. Inc.*, 924 F. Supp.

27  2d 1161, 1174 n.2 (E.D. Cal. 2013) (describing the conflict).  Kelly argues in his opposition that
    these factors apply, and BP does not contend otherwise, so the court declines to address the

28  conflict here.

As to the fourth prong, BP may be liable for a misleading partial representation if it made an affirmative representation and did not "disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." *Warner Constr. Corp. v. City of L.A.*, 2 Cal. 3d 285, 294 (1970).  The facts alleged here do not suffice.  BP indeed advertised it would charge a certain price for gasoline and did not specify that price was a cash-only price, but BP is not required to accept any form of payment other than cash, and it disclosed the debit card fee to Kelly before he paid.

3.    Reliance

Kelly must specifically allege that he actually relied on BP's omission and that the omission caused him to act as he did.  *See Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007) (dismissing plaintiffs' bait-and-switch CLRA claim because plaintiffs had not alleged they saw, read or otherwise relied on allegedly false advertisements).  In the simplest sense, Kelly does allege he saw the street sign, saw no disclosure of a debit card fee, and was thus "baited" to pull into the ARCO station, where he spent time buying gas from BP for a total of $0.35 more than he originally expected.  This theory of liability does not withstand common sense scrutiny.  The term "bait-and-switch" describes a scheme in which the fraudster lures in his victims "with glib salesmanship," never intending to deliver the product advertised, carefully laying and springing his trap.  *Goldberg v. Manhattan Ford Lincoln-Mercury, Inc.*, 492 N.Y.S.2d 318, 322 (N.Y. Sup. Ct. 1985)).  Kelly does not allege BP intended to sell gas for a different price, to sell a different brand or grade of gas, or that BP promised it would apply no fee to his purchase.  His allegations do not describe, with any level of particularity, a plot to deprive him of $0.35, of his time, or of his gas.  He alleges only that BP did not disclose the existence of a fee for using its on-site machines to pay for gas with a debit card.  BP always intended to sell gasoline for the price advertised.  It charged a fee only if the customer used BP's debit card machine rather than cash, and it required each customer's consent before charging that fee.  No law obligates BP to accept any method of payment other than cash, and Kelly does not allege BP accepts other forms of payment, such as

/////

12

1  credit or charge cards, with or without a fee, disclosed or otherwise.  Kelly has not adequately

2  alleged reliance.

3       B.    UCL

4       The UCL broadly proscribes any "unlawful, unfair, or fraudulent business act or

5  practice."  Cal. Bus. & Prof. Code § 17200.  Its use of the word "or" creates "three varieties of

6  unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."  *Cel-Tech*,

7  20 Cal. 4th at 180.

8       First, because the UCL describes "unlawful" practices, it "borrows violations of

9  other laws" to create a new cause of action.  *Id.*  A CLRA violation may form the basis for an

10  unlawful business practice claim under the UCL, *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App.4th

11  1342, 1383 (2012), but because Kelly has not stated a claim under the CLRA, he has not made

12  out a claim under the "unlawful" aspect of the UCL.

13       Second, the UCL prohibits "unfair" business acts and practices.  "An act or

14  practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing

15  benefits to consumers or to competition, and is not an injury the consumers themselves could

16  reasonably have avoided."  *Daugherty*, 144 Cal. App. 4th at 839.  California courts have

17  described unfair practices as those which "offend[] an established public policy" or are "immoral,

18  unethical, oppressive, unscrupulous or substantially injurious to consumers." *People v. Casa*

19  *Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984).[3]  Kelly's allegations do not

20  rise to the level of unfairness suggested by these definitions.  He alleges injury of losing only very

21  small amounts of money and small amounts of time, and he concedes BP later disclosed he would

22  be required to pay a fee, and only if he did not pay with cash.

23       Third, the UCL prohibits "fraudulent" business acts or practices.  A plaintiff can

24  state a claim under this aspect of the UCL "even without allegations of actual deception,

25  reasonable reliance and damage."  *Daugherty*, 144 Cal. App. 4th at 838.  The plaintiff need only

26

27       [3] The California Supreme Court has expressed doubt about the usefulness of the *Casa
Blanca* and similar definitions of "unfair," but has declined to expressly condemn it in this
28  context.  *See Cel–Tech*, 20 Cal. 4th at 186–87 & n.12.

show "members of the public are likely to be deceived." *Id.* (citing *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983)).  But a defendant cannot be held liable under the UCL for failing to disclose a fact it had no affirmative duty to disclose. *Aguila v. Gen. Motors LLC*, No. 13-00437, 2013 WL 3872502, at *6 (E.D. Cal. July 25, 2013) (citing *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) ("Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL.")).  For the reasons described in the previous section, BP had no duty to disclose the debit card fee.  Kelly has not stated a claim under the "unlawful" aspect of the UCL.

V.     CONCLUSION

The Federal Rules of Civil Procedure provide a court should "freely grant leave" to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a).  The Ninth Circuit has "stressed Rule 15's policy of favoring amendments."  *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).  But the decision is within the court's discretion, and should be guided by Rule 15's purpose: decision on the merits.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  A court need not grant leave to amend if an amendment would be an "exercise in futility."  *Ascon Properties*, 866 F.2d at 1160.  In addition, a court should look to whether the plaintiff has previously amended the complaint, as "the district court's discretion is especially broad 'where the court has already given a plaintiff one or more opportunities to amend [its] complaint.'"  *Id.* at 1161 (quoting *Leighton*, 833 F.2d at 186 n.3).

Here granting leave would not advance the purposes of Rule 15 or serve any purpose.  Counsel for Mr. Kelly agreed at the hearing that amendment would be futile if the court granted this motion, because he cannot say anything more than is set forth in his current pleadings.  BP's motion to dismiss is GRANTED and the complaint is dismissed with prejudice.

IT IS SO ORDERED.

DATED: December 29, 2014.

UNITED STATES DISTRICT JUDGE